J-A17015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.I.T.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.R.T., MOTHER | No. 342 EDA 2016 |

Appeal from the Decree December 17, 2015
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000580-2015
CP-51-DP-0001714-2013
FID: 51-FN-003381-2013

| | |
|---|---|
| IN THE INTEREST OF: M.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.R.T., MOTHER | No. 343 EDA 2016 |

Appeal from the Decree December 17, 2015
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000579-2015
CP-51-DP-0001713-2013
FID: 51-FN-003381-2013

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED SEPTEMBER 12, 2016**

---

[*] Retired Senior Judge assigned to the Superior Court.

In these consolidated appeals[1], S.R.T. (Mother) appeals from the decrees of the Court of Common Pleas of Philadelphia County, entered December 17, 2015, that terminated her parental rights to her son, D.I.T.M., born in September of 2011, and her son M.T., born in May of 2010 (Children), and changed the Children's goals from reunification to adoption. We affirm on the basis of the trial court opinion.[2]

In its opinion entered February 5, 2016, the trial court aptly summarized the events that led the Philadelphia Department of Human Services (DHS) to file a petition for involuntary termination. We respectfully direct the reader to that opinion for a more complete summary of the facts of this case.

However, for the convenience of the reader, we note briefly that Mother became known to DHS when it received a General Protective Services Report that Mother appeared to be intoxicated while pushing one of her sons in a stroller. Mother was previously diagnosed with ADHD, bipolar disorder and depression. She had left her Children with her own eighty year-old Mother, who was not physically able to care for them. Mother

---

[1] This Court consolidated these appeals, *sua sponte*, on February 24, 2016. Mother apparently filed two previous appeals of these decrees *pro se*, at 255 and 256 EDA 2016, that this Court docketed on January 27, 2016. Mother filed praecipes to discontinue those appeals on February 11, 2016.

[2] The trial court also terminated the parental rights of the Children's fathers, who did not appeal those terminations.

enrolled in several drug and alcohol treatment programs but continued to test positive for PCP and benzodiazepines. After the Children were in foster care for twenty-eight months, Mother had still failed to achieve compliance with the objectives of her Single Case Plan. DHS filed petitions to terminate Mother's parental rights to the Children on August 27, 2015.

The trial court held a hearing on DHS' petitions on December 17, 2015. Testifying at that hearing, in addition to Mother, were Turning Points for Children Case Manager, Essence Jones, and Turning Points visitation coach, Olanda Owens. The trial court entered its decrees terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b) and changing the Children's goals to adoption, on December 17, 2015. Mother timely filed her notice of appeal and statement of errors complained of on appeal in regard to D.I.T.M. on January 7, 2016, and in regard to M.T. on January 15, 2016. The trial court filed an opinion on February 5, 2016. (*See* Trial Court Opinion, 2/05/16). *See* Pa.R.A.P. 1925.

Mother raises the following two inter-related questions on appeal:

1. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights where [DHS] failed to prove by clear and convincing evidence that involuntary [sic] terminating [Mother's] parental rights would best serve the emotional needs and welfare of [the Children]?

2. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating Mother's parental rights without fully considering the impact of termination on the emotional needs and welfare of [the Children]?

(Mother's Brief, at 3).

Our standard of review is well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Furthermore, this Court has explained:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record.

*In the Interest of S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one cited subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Section 2511 provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of

relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re T.F.**, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**In the Interest of K.Z.S.**, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

Here, preliminarily, we note that Mother neither raises nor argues the question of whether the trial court erred when it terminated her parental rights pursuant to 23 Pa.C.S.A. § 2511(a) in either her statement of questions or in the argument section of her brief. (**See** Mother's Brief, at 3, 6-19); **see also Krebs v. United Refining Company of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that appellant waives issues not raised in both concise statement of errors complained of on appeal and statement of questions involved in appellate brief); Pa.R.A.P. 1925(b)(4)(vii) (providing that "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 611 Pa. 643, 24 A.3d 364 (2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). Accordingly, Mother has waived any challenge pursuant to section 2511(a).

Additionally, Mother has waived any challenge to the change of permanency goal to adoption by her failure to raise the issue in both her concise statement and in the statement of questions involved portion of her brief, and her failure to develop any challenge to the change of permanency goal in the argument portion of her brief. (**See** Concise Statements, 1/07/16; 1/15/16; Mother's Brief, at 3, 6-19).

Also, Mother has failed to raise in her concise statement her claim that the trial court should have ordered a formal bonding evaluation. (*See* Mother's Brief, at 18-19; *see also* Concise Statement of Errors). Therefore, she has waived this issue as well.

Finally, Mother challenges the trial court's finding that termination of the parent-child bond would best serve the needs of the Children.

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issues Mother has raised on appeal. The trial court opinion properly disposes of the questions presented. (*See* Trial Ct. Op., at 5-13) (concluding that: DHS met its statutory burden by clear and convincing evidence regarding (1) change of goal to adoption and (2) termination of Mother's parental rights, where Mother exhibited a pattern of

not complying with court orders or her single case plan, continued to test positive for PCP, and failed to obtain verified employment, stable housing or mental health treatment; and (3) termination would best serve Children's emotional needs and welfare where the Children's current placement provides them with stability, parental care and permanency.). Accordingly, we affirm on the basis of the trial court's opinion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2016

CHILDREN'S FAST TRACK APPEAL

FILED IN
SUPERIOR COURT
MAR 16 2016
EASTERN DISTRICT

IN THE SUPERIOR COURT OF PENNSYLVANIA

In re: M.T. & D.M.T.
No. 342 EDA 2016, No. 343 EDA 2016

Appeal of S.R.T.

TRIAL COURT OPINION

Appeal from the Order Dated December 17, 2015
of the Court of Common Pleas of Philadelphia County,
Tr. Dkt. No. DP# 0001713-2013
Tr. Dkt. No. DP# 0001714-2013

SARAH EMILY COBURN
Identification No. 311641
Community Legal Services Inc.
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3783
Attorney for Mother, S.R.T.

In the Interest of M.T., a Minor : CP-51-DP-0001713-2013
: CP-51-AP-0000579-2015
In the Interest of D.T.M., a Minor : CP-51-DP-0001714-2013
: CP-51-AP-0000580-2015
:
: FID: 51-FN-003381-2013
:
APPEAL OF: S.T., Mother : 342/3 EDA 2016

**OPINION**

**Fernandes, J.:**

Appellant S.T., ("Mother"), appeals from the order entered on December 17, 2015, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to M.T. ("Child 1") and D.T.M. ("Child 2") (the "Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Sarah Coburn, Esq. of Community Legal Services, counsel for Mother, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

**Factual and Procedural Background:**
This family became known to DHS on September 28, 2011, when DHS received a General Protective Services ("GPS") report that Mother was observed intoxicated, pushing Child 1 in a stroller. Another GPS report on February 21, 2013, alleged that Mother and N.N. ("Father 1," the father of Child 1) were using PCP and other drugs, leaving the Children with Mother's eighty-year-old grandmother who was unable to care for them. On April 10, 2013, DHS began in-home monitoring of the Children. DHS learned that Mother had been diagnosed with ADHD, bipolar disorder and depression, and had received mental health treatment from February 2012, to April 2013. In the Family Service Plan (FSP) developed on April 18, 2013, the goal for the Children was to remain in the home, but removal was an imminent risk. Mother's objectives under the FSP were to meet with the DHS social worker twice a week, ensure the Children were not left alone at

any time, to set age-appropriate behavior rules for the Children, participate in drug and alcohol treatment, sign appropriate releases, comply with recommended medical treatments and ensure the Children received appropriate medical care. Mother was also to take six drug screens, get a mental health evaluation and comply with mental health treatment recommendations.

On May 20, 2013, Mother was discharged from her mental health treatment for noncompliance. While another scheduled appointment was made, with another mental health provider for June 6, 2013, Mother did not attend. That same day the DHS social worker visited the home and found Child 1 outside alone. Mother did not return for twenty minutes. Between June and July 2013, Mother did not take Child 2 to five scheduled wellness visits with his primary care physician. On June 27, 2013, Mother registered for drug and alcohol treatment at CHANCES, where she tested positive for PCP and benzodiazepines. Mother was discharged from CHANCES for inconsistent attendance three days later. On August 3, 2013, Mother admitted to using PCP. She was again observed under the influence of drugs or alcohol on August 7, 2013.

DHS filed dependent petitions for the Children on August 13, 2013. At a hearing on the petitions on August 28, 2013, the trial court adjudicated the Children dependent and committed them to DHS. They were placed with a foster family. Mother was ordered to the Clinical Evaluation Unit ("CEU") for a forthwith drug screen and assessment for dual diagnosis. (N.T. 12/17/15, pgs. 9-10). She tested positive for PCP and opiates on August 28, 2013. She tested positive for PCP again on September 5, 2013. On September 5, 2013, Mother submitted to a chemical dependency evaluation at CEU. She revealed a long history of PCP use, as well as diagnoses for ADHD and anxiety. Mother again tested positive for PCP on September 15, 2013. A quarterly review of her FSP showed that Mother was not compliant with her goals to seek drug, alcohol and mental health treatment or to maintain consistent visitation with the Children. The FSP was revised on November 15, 2013. The goal for the Children was reunification with Mother. Mother's objectives were to obtain adequate housing, participate in drug, alcohol and mental health evaluations, follow all treatment recommendations, maintain drug-free status verified by random drug screens and sign appropriate releases. Mother engaged in drug and alcohol treatment from October 14, 2013, but tested positive four times during the course of treatment. She tested positive for benzodiazepines and PCP on November 26, 2013. Mother was discharged from treatment on February 13, 2014, for lack of attendance.

Mother was referred to the Achieving Reunification Center ("ARC"), which completed a summary report on March 27, 2014. It stated that Mother was not addressing her drug and alcohol goal, her housing goal or her parenting goal and was often missing scheduled appointments. The report stated that Mother's file was closed for non-attendance. She was subsequently re-referred to ARC. Mother was discharged from her substance abuse treatment on April 4, 2014, after a physical altercation with her roommate. Mother tested positive for PCP on May 28, 2014. Mother did not participate in parenting classes, and on August 11, 2014, her ARC file was closed for non-attendance. On September 25, 2014, a Single Case Plan ("SCP")[1] was developed. The permanency goal for the Children was reunification with Mother, with a concurrent goal of adoption. Mother's goals under this plan were to find adequate housing, continue mental health and drug treatment, complete parenting classes, maintain visits with her Children and take three random drug screens. A November 17, 2014, CEU progress report showed that Mother was enrolled in outpatient substance abuse treatment. Mother had attended nine of thirteen scheduled sessions in August 2014, two of four in October 2014, and one of two in November 2014. Mother tested positive for PCP on November 20, 2014. At SCP meetings on March 23, 2015 and July 27, 2015, Mother's goals remained unchanged. Throughout the life of the case, Mother has not been more than moderately compliant. At all permanency reviews, the trial court has always found reasonable efforts on the part of DHS. DHS filed petitions to change the Children's permanency goals to adoption and involuntarily terminate the parental rights of Mother, Father 1 and A.M. ("Father 2," the father of Child 2) on August 27, 2015. (N.T. 12/17/15, pg. 9).

The petitions to change the permanency goal to adoption and terminate parental rights were heard on December 17, 2015. At this hearing, the assigned CUA social worker testified that the Children had been in care for twenty-eight months and that Mother was not compliant with her SCP goals. (N.T. 12/17/15, pgs. 21-22). Mother had a mental health diagnosis, but had been out of therapy since May 7, 2015, in contravention of court orders. (N.T. 12/17/15, pgs. 11-12). The CUA social worker did not know whether Mother had appropriate housing, since Mother refused to set up an appointment for a home evaluation. (N.T. 12/17/15, pg. 13). Mother had told CUA she was employed, but did not provide pay stubs, even after the social worker requested proof of

---

[1] At this point the case was transferred to a Community Umbrella Agency ("CUA").

employment several times. (N.T. 12/17/15, pg. 14). The CUA social worker testified that Mother was abusing drugs, specifically PCP. Mother did not maintain sobriety, and was not in drug and alcohol treatment, in contravention of court orders. Mother also did not appear for any of the three random drug screens ordered at the prior hearing. (N.T. 12/17/15, pgs. 15-17). Mother claimed she did not have a drug problem, even as she repeatedly tested positive for PCP whenever she took a drug screen. (N.T. 12/17/15, pg. 17). Mother had completed court-ordered parenting, but the CUA social worker testified that she could not recommend unsupervised visits because Mother was not using the skill she had learned at the parenting class. (N.T. 12/17/15, pgs. 17-19). The CUA social worker testified that Mother missed scheduled medical appointments for the Children. Mother attended therapy with the Children once, but was two hours late. (N.T. 12/17/15, pg. 21). The Children require Individualized Education Plans ("IEP"), but Mother does not attend IEP meetings. (N.T. 12/17/15, pgs. 20-21). The CUA social worker further testified that there was no healthy, parental bond between Mother and the Children, and that the Children would not suffer irreparable harm if Mother's parental rights were terminated. The Children have a parental bond with their foster parents and call the foster parents "Mom" and "Dad". The foster provide the Children with a safe and permanent home and the Children would suffer irreparable harm if removed from their care. It would be in the best interest of the Children if their permanency goal was changed to adoption. (N.T. 12/17/15, pgs. 34). The CUA visitation coach, who observed Mother's visits with the Children, also testified. The visitation coach testified that the Children have a much better bond with their foster parents than Mother, and are happy at the end of visits to go home with the foster parents. The Children call their foster parents "Mom" and "Dad", and see them as their parents. The Children are much better behaved around the foster parents than around Mother. (N.T. 12/17/15, pgs. 63, 66). The Children are active and engaged when Mother visits. However, the visitation coach testified that Mother does not have enough parenting skills to control the Children's unruly behavior, and that she corrects the Children when they refer to their foster parents as "Mom" and "Dad". (N.T. 12/17/15, pgs. 94, 103). The Children like to eat McDonald's meals and play with toys and are happy to leave the visit with the foster parent. (N.T. 12/17/15, pgs. 97-98). Lastly, Mother testified at the hearing. She admitted to testing positive for PCP as recently at September 2015, even though Mother had been enrolled in several drug and alcohol programs in the past years. (N.T. 12/17/15, pg. 126). When asked whether she had used drugs since that date she replied, "uh-uh, I don't believe so." (N.T. 12/17/15, pg. 128). Mother

said she was prescribed medications after that date, but did not take them because she was pregnant. Mother also admitted that she tested positive for PCP on October 10, 2015, when she gave birth to another child. Mother does not have custody of that child, who lives with his father. (N.T. 12/17/15, pgs. 129-131). Mother was not enrolled in drug and alcohol treatment, had attended only one dental appointment for the Children and was not going to family or Child's individual therapy or medical appointments with the Children. (N.T. 12/17/15, pgs. 131-133). Mother specifically commended the foster parents, saying that they had "done a lot" to raise the Children. (N.T. 12/17/15, pg. 124-125). The court found clear and convincing evidence that it would be in the best interest of the Children to change their permanency goal to adoption. The court found clear and convincing evidence to involuntarily terminate Mother's parental rights. The court also found that there would be no irreparable harm to the Children if Mother's parental rights were terminated. On January 7, 2016, Mother filed a *pro se* appeal. On January 15, 2016, Mother's attorney also filed an appeal on behalf of Mother.[2] Father 1 and Father 2 have not appealed.[3]

**Discussion:**

On appeal, Mother alleges the following errors:

1. The trial court committed an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights under 23 Pa.C.S. §2511(a)(5) and (8) and (b), where the Department of Human Services of the City of Philadelphia (DHS) failed to prove by clear and convincing evidence the involuntary terminating [*sic*] [Mother's] parental rights would best serve the needs and welfare of [the Children].

2. The trial court committed an error of law and abuse of discretion by changing the permanency goal of [the Children] from reunification to adoption where [DHS] failed to provide sufficient evidence that such a goal change would be best suited for [the Children's] needs and welfare.

The trial court terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). In light of Mother's *pro se* appeal and Mother's counsel's appeal, this opinion will address all sections of 2511(a) and (b).

---

[2] The trial court requests that Mother's *pro se* appeals (255/6 EDA 2016) be dismissed since they do not comply with Pa.R.A.P. 1925(b). This opinion responds only to the issues raised in the January 15, 2016, appeal filed by counsel appointed to represent Mother.

[3] Father 1 and Father 2 had their parental rights involuntarily terminated on December 17, 2015.

Mother has also appealed the involuntary termination of her parental rights. The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

> (a) **General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:
>
> (1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. _In re Adoption of Atencio_, 650 A.2d 1064 (Pa. 1994). To satisfy section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. _In re B.N.M._, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. _In re D.J.S._, 737 A.2d 283 (Pa. Super. 1999). In Pennsylvania, a parent's right to custody and rearing of his child is converted upon failure to fulfill parental duties into the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy and safe environment. _In re B.N.M._ at 856.

The petitions for involuntary termination were filed against Mother on August 27, 2015. For the entire six month period preceding the filing of the petitions, Mother was out of compliance with court orders and was not fulfilling her SCP goals. Because of her prior hospitalizations for mental health, Mother was required to seek mental health treatment, but she stopped attending treatment on May 7, 2015. (N.T. 12/17/15, pg. 11-12). Mother was required to obtain adequate housing, but for the entire six month period CUA was not able to do a home assessment, despite repeatedly requesting permission to visit the home. (N.T. 12/17/15, pgs. 13, 132). Mother was ordered to provide proof of her employment several time to CUA, but she did not. (N.T. 12/17/15, pg. 14).

Because of her past drug and alcohol abuse, Mother was ordered to attend drug and alcohol treatment, remain drug-free and take random drug screens. She does not take the random screens, and the CUA worker testified that Mother did not remain sober over the time the Children were in DHS custody. (N.T. 12/17/15, pgs. 14-16). Mother has not successfully completed any drug and alcohol program. Mother has been in and out of different drug and alcohol programs. (N.T. 12/17/15, pg. 126). Mother continues to test positive for PCP and refuses to attend random drug screens. (N.T. 12/17/15, pgs. 10, 14-16, 128-131). In addition, Mother missed a number of medical and IEP appointments for the Children. (N.T. 12/17/15, pgs. 20-21). Mother's visits continue to be supervised. (N.T. 12/17/15, pgs. 17-20, 94, 103). Over the six months prior to the filing of the petition, Mother has failed to perform key parental duties by continuing to use drugs, not meeting her SCP goals and not complying with court orders. Mother's behavior of non-compliance is not limited to the six month period, but extends back to the beginning of the case, since Mother's FSP goals from April 18, 2013 still remain unmet. Mother has an affirmative duty to parent. Mother has failed, refused and evinced a settled purpose of relinquishing parental claims to the Children by not performing parental duties. These facts were demonstrated by clear and convincing evidence, so the trial court did not err or abuse its discretion by terminating Mother's parental rights under this section.

The trial court also terminated Mother's parental rights under the Adoption Act at 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal, cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

The Children were taken into DHS custody because Mother was not able to provide them with essential parental care: she left the Children unsupervised, did not schedule medical appointments and abused drugs. Mother has an affirmative duty to act to remedy the conditions which led to removal. Mother failed to take affirmative steps to complete her SCP goals and comply with court

orders. She was referred for mental health and drug and alcohol treatment by the trial court and by DHS. She has been out of therapy since May 7, 2015. (N.T. 12/17/15, pgs. 11-12). Mother attended various drug and alcohol treatment programs, but tested positive for PCP before, during and after treatment. She was discharged from treatment June 30, 2013 and again February 13, 2014, both times for non-attendance. (N.T. 12/17/15, pg. 126). She has not remained sober over the course of this case. Mother does not attend her court-mandated random drug screens. (N.T. 12/17/15, pgs. 14-16). Mother tested positive for PCP in September 2015, but testified that she had not used drugs since that time. She admitted that she had tested positive for PCP on October 10, 2015, when she gave birth to another child. (N.T. 12/17/15, pgs. 128-131). Mother denies that she has a drug problem (N.T. 12/17/15, pg. 17). Mother does not attend the Children's medical appointments or IEP meetings at the school. (N.T. 12/17/15, pgs. 20-21). Under the current circumstances, Mother is unable to remedy the causes of her incapacity in order to provide the Children with essential parental care, control or subsistence necessary for their physical and mental well-being. Mother refuses to take care of her Children's needs. The Children need permanency, which Mother cannot provide at this moment. Consequently, DHS has met its burden under §2511(a)(2) of the Adoption Act.

Mother has appealed the termination of her parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

Children in this case have been under DHS supervision since April 10, 2013, and in DHS custody since August 28, 2013. The Children were placed with their current foster parents because Mother was unable or unwilling to parent. DHS and CUA have referred Mother to several drug and alcohol treatment programs, as well as ARC for housing. (N.T. 12/17/15, pgs. 12-13, 126). CUA has made outreach to Mother telling her to come to CEU for random drug screens, but Mother has not attended. (N.T. 12/17/15, pgs. 14-16). Mother tested positive for PCP twice since the petitions were filed. (N.T. 12/17/15, pgs. 129-130). She is not in a drug and alcohol program, and claims she does not have a drug problem. (N.T. 12/17/15, pg. 17). Mother has not allowed CUA to do a home assessment. (N.T. 12/17/15, pg. 132). She is not in mental health treatment. (N.T. 12/17/15, pgs. 11-12). Mother completed parenting classes, but this did not impact her behavior and CUA would not authorize unsupervised visits. (N.T. 12/17/15, pgs. 17-20, 94, 103). Because of Mother's pattern of not complying with court orders and not being in compliance with her SCP, the trial court found that Mother was not able to remedy the conditions which led to the Children's placement within a reasonable time. Mother has been aware of her SCP objectives because she attended the SCP meetings. The Children have been in placement with their current foster parents for twenty-eight months. The Children's current placement provides them with stability, parental care and permanency. (N.T. 12/17/15, pgs. 34-36). Foster parents provide for all the Children's needs. (N.T. 12/17/15, pgs. 31, 63, 66). Mother has been given more than ample time to place herself in a position to be a parent to the Children. The Children cannot wait for Mother to decide to become drug-free, and be a responsible parent. Throughout the life of the case, the court has found reasonable efforts on the part of DHS to reunify the Children with Mother. As a result the trial court found that termination of Mother's parental rights was in the best interest of the Children for their physical, intellectual, moral and spiritual well-being. (N.T. 12/17/15, pg. 34). Because the trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to Mother, only the present state of the conditions. _In re: Adoption of K.J._, 938 A.2d 1128, 1133 (Pa. Super. 2009). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love, comfort, security and stability. _In re Bowman_, A.2d 217 (Pa. Super. 1994). See also _In re Adoption of T.T.B._, 835 A.2d 387, 397 (Pa. Super. 2003).

The Children in this case have been in DHS custody for twenty-eight months. They were removed because Mother was unable or unwilling to parent. Since the Children were removed, Mother has not complied with court orders. The CUA social worker rated Mother's compliance with her SCP objectives as "none". (N.T. 12/17/15, pgs. 21-22). Mother has not allowed CUA to do a home assessment, has not maintained consistent mental health treatment, has continued to test positive for PCP, has not taken random drug screens, has not successfully completed drug and alcohol treatment and has not improved her parenting skills in order to progress to unsupervised visitation with the Children. (N.T. 12/17/15, pgs. 10-12, 14-20, 94, 103, 128-132). Mother does not attend to the Children's needs, not attending medical appointments or IEP meetings at the school. (N.T. 12/17/15, pgs. 20-21). The court heard credible testimony that it was in the Children's best interest for Mother's parental rights to be terminated. (N.T. 12/17/15, pg. 34). The Children are in a safe home and stable environment with foster parents who provide for all their needs. (N.T. 12/17/15, pgs. 31, 63, 66). The Children need permanency. The conditions leading to removal continue to exist, as Mother has failed to successfully complete her FSP and SCP objectives. The testimony of DHS witnesses was unwavering and credible. Mother is not ready, willing or able as of today to parent the Children. Because the record contains clear and convincing evidence, the trial court did not abuse its discretion and termination under this section was also proper.

After a finding of any grounds for termination under section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. _In re Involuntary Termination of C.W.S.M._ and _K.A.L.M._, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing,

necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.,* 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The CUA social worker testified that Mother did not have a healthy, positive maternal bond with either of the Children. She also testified that neither of the Children would suffer irreparable harm if Mother's parental rights were terminated. (N.T. 12/17/15, pgs. 32-34). The foster parents provide for all the Children's needs. Mother is unable to properly supervise the Children. The Children are much better behaved around the foster parents than around Mother. (N.T. 12/17/15, pgs. 15, 63, 66). Although Mother comes to visits, she redirects the Children when they refer to their foster parents as "Mom" and "Dad". (N.T. 12/17/15, pg. 94). Mother is not bonded with either child. (N.T. 12/17/15, pgs. 32-34). She provides more attentions to Child 1 than Child 2. (N.T. 12/17/15, pg. 103). The Children are happy to see Mother at the visits because she brings them McDonald's meals, and because the visiting location has toys to play with, but when it is time to leave, the Children are very happy to leave with their foster parents. (N.T. 12/17/15, pgs. 97-98). The Children need permanency. DHS witnesses' testimony was credible. DHS has met its burden of clear and convincing evidence that termination would not destroy an existing beneficial relationship; therefore, the trial court did not commit error or abuse its discretion under this section.

As to the last issue on appeal, Mother alleges that the court erred in changing the Children's permanency goal from reunification to adoption. In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.,* 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor,* 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its

efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670 (Pa. Super. 2001). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

DHS and CUA have made extensive efforts to help Mother. Throughout the case, the trial court has always found reasonable efforts on behalf of DHS. Mother has attended every FSP and SCP meeting and has signed the FSP. Mother has been referred by DHS and the court to various drug and alcohol and dual diagnosis mental health programs. (N.T. 12/17/15, pg. 126). Mother has not successfully completed any. Mother has continued to test positive for PCP as recently as October 10, 2015. (N.T. 12/17/15, pgs. 128-131). Mother's drug of choice is PCP. (N.T. 12/17/15, pg. 10). Mother told the CUA social worker that she did not have a problem with drug dependency. (N.T. 12/17/15, pg. 17). Mother has failed to comply with court orders to give random drug screens. The CUA social worker has asked Mother to give randoms, but she refused. (N.T. 12/17/15, pgs. 14-16). Mother has not been compliant with her mental health objective since May 7, 2015. (N.T. 12/17/15, pgs. 11-12). Mother did complete parenting classes, a requirement for her to get unsupervised visitation. However CUA did not give her unsupervised visitation because Mother did not employ the skills she learned in the classes, and her behavior towards the Children was unchanged. (N.T. 12/17/15, pgs. 17-20, 94, 103). Mother does not have appropriate housing for the Children. DHS has offered Mother assistance with various housing programs, but Mother has failed to take advantage of them. (N.T. 12/17/15, pgs. 12-13). Mother failed to let the social worker do a home evaluation after her last move. (N.T. 12/17/15, pg. 132). The court heard credible testimony from the DHS witnesses that Mother was not ready, after twenty-eight months, to have unsupervised visits with the Children, let alone parent them. (N.T. 12/17/15, pg. 19). Mother does not attend Children's medical appointments or IEP meetings at the school. (N.T. 12/17/15, pgs. 20-21, 131-133). It is in the Children's best interest to change their permanency goal to adoption. (N.T. 12/17/15, pg. 34). The foster parents provide a safe, permanent home for the Children and provide for all their needs. The Children see the foster parents as their parents. (N.T. 12/17/15, pgs. 31, 63, 66). The Children need permanency. Mother is unable to provide a safe and permanent home. The record has established clear and convincing evidence that the trial court did not err or abuse its discretion in changing the Children's goal to adoption.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding the change of goal to adoption and termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) since it would best serve the Children's emotional needs and welfare. The trial court's finding that the permanency goal should be changed to adoption and termination of Mother's parental rights was proper and should be affirmed.

By the court,

_____

Joseph Fernandes J.

IN THE SUPERIOR COURT OF PENNSYLVANIA

COMMUNITY LEGAL SERVICES, INC.                  Attorney for Mother,
BY: SARAH EMILY COBURN                        S.R.T.
Identification No. 311641
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3783

In re:                        :

M.T. and D.M.T.         :     NO. 342 EDA 2016. NO. 343 EDA 2016
                        :     (Consolidated)

## CERTIFICATION OF SERVICE

       I, Sarah Emily Coburn, Esquire, counsel for Mother S.R.T. in the above matter, hereby certify that I served a copy of the foregoing trial court opinion, by first class mail, postage prepaid, to the following persons:

The Honorable Joseph Fernandes          Jo-Ann Braverman, Esq., Attorney for
Court of Common Pleas Philadelphia County    Fathers Nicholas Navas & Anthony
Family Court – Juvenile Division           Molinero
1501 Arch Street                       1500 Walnut St., 21st. Floor
Philadelphia, PA 19103               Philadelphia, PA 19102

Sharon Wallis, Esq., Child Advocate      City of Philadelphia Law Department
640 Rodman St.                      Katherine Holland, Esq.
Philadelphia, PA 19147              Assistant City Solicitor
                                    1515 Arch Street
                                    Philadelphia, PA 19102

Date: <u>March 14, 2016</u>

                                      Sarah Emily Coburn, Esquire
                                      Community Legal Services, Inc.
                                      Attorney for Appellant, S.R.T.